```
 1                 UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF TEXAS
 2                      HOUSTON DIVISION

 3

 4   UNITED STATES OF AMERICA    .   4:19-CR-00649-1

 5   VERSUS                      .   HOUSTON, TEXAS

 6   GEORGE DANIEL MCGAVITT      .   MARCH 11, 2020

 7   . . . . . . . . . . . . . . .   11:26 A.M.

 8

 9                 TRANSCRIPT OF REARRAIGNMENT
              BEFORE THE HONORABLE GRAY H. MILLER
10                UNITED STATES DISTRICT JUDGE

11

12                           *****

13       This transcript has been furnished at public expense under

14   the Criminal Justice Act and may be used only as authorized by

15   court order.

16       Unauthorized reproduction will result in an assessment

17   against counsel for the cost of an original and one copy at the

18   official rate.

19       General Order 94-15, United States District Court,

20   Southern District of Texas.

21                           *****

22

23

24

25
```

1                              *APPEARANCES*

2

3

4    FOR THE GOVERNMENT:

5         Kimberly Leo
          Assistant United States Attorney
6         1000 Louisiana
          Suite 2300
7         Houston, Texas  77002

8

9    FOR THE DEFENDANT:

10        Lewis A. Thomas
          LEWIS THOMAS LAW PC
11        14027 Memorial Drive
          Number 392
12        Houston, Texas  77079

13

14   OFFICIAL COURT REPORTER:

15        Mayra Malone, CSR, RMR, CRR
          U.S. Courthouse
16        515 Rusk, Room 8004
          Houston, Texas  77002
17

18

19   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
20

21                           - - - - -

22

23

24

25

***PROCEEDINGS***

THE COURT:  Court calls Criminal Case 19-649, United States of America versus George Daniel McGavitt.

MR. THOMAS:  Lewis Thomas on behalf of Mr. McGavitt. Good afternoon -- morning, Judge.

THE COURT:  Good morning.

MS. LEO:  Good morning, Your Honor.  Kimberly Leo on behalf of the United States.

THE COURT:  Ms. Leo, good morning to you.

Mr. McGavitt is present.

Mr. McGavitt, it is my understanding that you wish to enter a plea of guilty to Counts One, Two and Three of the indictment that's pending against you.  Is that right?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Before I can accept a guilty plea from you, I have to ask you certain questions that you must answer under oath.  I need to be sure that your plea is voluntary, entered into freely and without any coercion.  I need to be sure that your plea is informed, entered with a clear understanding of the consequences of pleading guilty and with an understanding of all the legal rights that you give up when you plead guilty.  I also need to be sure that there is a basis in fact for your plea.  So to the extent that you can, would you please raise your right hand and be placed under oath.

11:28    1        *(Defendant sworn)*

         2              THE COURT:  All right.  Thank you, sir.

         3                    Do you understand that you have now been placed

         4        under oath and that if you answer any of my questions falsely,

11:28    5        those answers could later be used against you in another

         6        prosecution for perjury, that is for making a false statement

         7        under oath?  Do you understand that?

         8              THE DEFENDANT:  Yes, Your Honor.

         9              THE COURT:  It is very important that you listen

11:28   10        carefully to all of my questions and that you give me truthful

        11        answers to all of those questions.  Will you do that?

        12              THE DEFENDANT:  Yes, sir.

        13              THE COURT:  Tell me your full name, please.

        14              THE DEFENDANT:  George Daniel McGavitt.

11:29   15              THE COURT:  How old are you?

        16              THE DEFENDANT:  Forty-six.

        17              THE COURT:  And how far in school did you go?

        18              THE DEFENDANT:  Ninth grade.

        19              THE COURT:  Obviously you are able to read and write

11:29   20        the English language without any problems?

        21              THE DEFENDANT:  Uh-huh.

        22              THE COURT:  Have you ever been treated for mental

        23        illness or psychological problems of any kind?

        24              THE DEFENDANT:  No, Your Honor.

11:29   25              THE COURT:  Are you addicted to any drugs?

11:29  1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  Are you sick today in any way that would

3     prevent you from understanding what is happening here?

4          THE DEFENDANT:  No, sir.

11:29  5          THE COURT:  Have you taken any medication, either

6     over-the-counter medication or prescription medication, in the

7     last few days or today?

8          THE DEFENDANT:  In the last couple days, yes, sir.

9          THE COURT:  What have you taken?

11:29  10          THE DEFENDANT:  Benadryl.

11          THE COURT:  Benadryl.  Okay.  Does that have any

12     impact on your ability to comprehend and understand what is

13     going on?

14          THE DEFENDANT:  No, sir.

11:29  15          THE COURT:  All right.  Have you had any illegal drugs

16     or alcohol in the last few days or today?

17          THE DEFENDANT:  No, Your Honor.

18          THE COURT:  Are you presently under the influence of

19     any drug or alcohol?

11:30  20          THE DEFENDANT:  No.

21          THE COURT:  Have you had enough time to talk to your

22     attorney in this case?

23          THE DEFENDANT:  Yes, I have.

24          THE COURT:  And are you satisfied with Mr. Thomas as

11:30  25     your attorney?

11:30   1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you need to ask him any questions or

3   get any advice from him before we go on?

4          THE DEFENDANT:  No.

11:30   5          THE COURT:  During the course of the hearing, if at

6   any point you need to ask Mr. Thomas a question or get advice

7   from him, you can do that before you answer my question.  Do

8   you understand that?

9          THE DEFENDANT:  Yes, sir.

11:30  10          THE COURT:  Mr. Thomas, have you had enough time to

11   investigate the law and the facts of your client's case?

12          MR. THOMAS:  I have, Your Honor.

13          THE COURT:  And are you satisfied that your client

14   understands the charges against him and the range of punishment

11:30  15   that he faces?

16          MR. THOMAS:  Yes, he does.

17          THE COURT:  Has your client been able to fully

18   cooperate with you?

19          MR. THOMAS:  Yes.

11:30  20          THE COURT:  And in your opinion, is he mentally

21   competent to enter a plea of guilty in this case?

22          MR. THOMAS:  He is.

23          THE COURT:  All right.  Thank you.

24              The Court finds that the defendant knowingly,

11:30  25   voluntarily, intelligently and with the advice of his attorney

11:30   1    seeks to enter a plea of guilty.

2                    Now, Mr. McGavitt, before I can accept a plea of

3    guilty, I need to make sure that you understand all the legal

4    rights that you give up when you plead guilty.

11:31   5                    So, first of all, you have the right, if you

6    wish, to plead not guilty to these charges.  And if you plead

7    not guilty, then you're entitled to have a trial on these

8    charges.  Do you understand your right to have a trial?

9                    THE DEFENDANT:  Yes, sir.

11:31  10                    THE COURT:  All right.  Now, if we had a trial, you

11   would be tried by a jury of 12 citizens from this district, or

12   by the judge without a jury, if everyone agreed to that.  Do

13   you understand that?

14                    THE DEFENDANT:  Yes.

11:31  15                    THE COURT:  You're entitled to be represented by an

16   attorney on these charges, and Mr. Thomas has been appointed to

17   represent Mr. McGavitt.  Mr. Thomas has been appointed to

18   represent you, and he is representing you without any charge to

19   you.

11:31  20                    If we had a trial, Mr. Thomas would be here, and

21   he would represent you throughout the trial, also without any

22   charge.  Do you understand that?

23                    THE DEFENDANT:  Yes, Your Honor.

24                    THE COURT:  Now, at this trial, the burden would be on

11:31  25   the United States to prove your guilt beyond a reasonable doubt

11:31   1   on each charge against you.  You would have no burden to prove

2   that you were innocent because under our system of justice, you

3   are presumed to be innocent.  Do you understand the presumption

4   of innocence?

11:32   5        THE DEFENDANT:  Yes, Your Honor.

6        THE COURT:  Now, in order to prove your guilt beyond a

7   reasonable doubt, the government would call witnesses, and they

8   would appear and testify here in open court under oath.  You

9   and Mr. Thomas would see and hear all of these witnesses, and

11:32   10  then he would be allowed to ask them questions on your behalf.

11  Do you understand that?

12       THE DEFENDANT:  Yes.

13       THE COURT:  Now, you would have no obligation to

14  present any evidence or to call any witnesses during this

11:32   15  trial; however, you would have the right to do so if you wanted

16  to.  And that would include the right to subpoena witnesses;

17  that is, to require them to come in to court and testify on

18  your behalf.  Do you understand that right?

19       THE DEFENDANT:  Yes.

11:32   20       THE COURT:  During this trial, you would also have the

21  right to remain silent.  You could testify on your own behalf

22  if you wanted to, but you are under no obligation to, because

23  no one can compel you to be a witness against yourself.  And if

24  you exercised your right to remain silent, it could not be held

11:33   25  against you.  In fact, you would have the right to have the

11:33   1    jury instructed that they could not use your silence as any

2    evidence of your guilt in this case.  Do you understand the

3    right to remain silent?

4              THE DEFENDANT:  Yes.

11:33   5              THE COURT:  Now, the fact that you chose to present

6    evidence of any kind would never change the burden of proof at

7    trial.  The government would always have the burden of proving

8    your guilt beyond a reasonable doubt on each charge against

9    you.  And at this trial, you could not be convicted unless

11:33   10   every member of the jury found that you were guilty beyond a

11   reasonable doubt on each charge against you.  In other words,

12   the verdict would have to be unanimous by all 12 members of the

13   jury.  Do you understand that?

14             THE DEFENDANT:  Yes, sir.

11:33   15             THE COURT:  Now, if you plead guilty today, and I

16   accept your plea, then your guilt is established, and you will

17   not have a trial.  Do you understand that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Also, by pleading guilty today, you are

11:33   20   giving up the right to have the facts that are pleaded in the

21   indictment or that affect your sentence proven to a jury or

22   proven beyond a reasonable doubt.  Do you understand that?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Also, by pleading guilty today, you are

11:34   25   giving up the right to make a number of arguments later on to

11:34    1   try and get your conviction set aside or your sentence set

         2   aside or reduced, arguments that you could have made if you had

         3   gone to trial and been convicted, rather than pleading guilty.

         4   Do you understand that?

11:34    5          THE DEFENDANT:  Yes, sir.

         6          THE COURT:  For example, you could not come forward

         7   later and argue that there were defects in the way that you

         8   were investigated, arrested or prosecuted in order to challenge

         9   your conviction or your sentence.  You would give up the right

11:34   10   to claim that you were subjected to an illegal search and

        11   seizure, that you gave an unconstitutional confession or that

        12   your right to a speedy trial was violated.  This is not a

        13   complete list, just a few examples, but I want you to

        14   understand that if you plead guilty today, and I accept your

11:34   15   plea, that you will not be able to raise these or similar

        16   defenses later on to attack your conviction or your sentence.

        17   Do you understand that?

        18          THE DEFENDANT:  I understand.

        19          THE COURT:  All right.  Are you a citizen of the

11:35   20   United States?

        21          THE DEFENDANT:  Yes.

        22          THE COURT:  All right.  These are felony offenses, and

        23   if your plea is accepted, you will be convicted, and you may

        24   lose your rights to vote, to hold public office, to serve on a

11:35   25   jury or to possess any kind of a firearm in the future.  Do you

11:35   1   understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  All right.  Also by pleading guilty to

4   this offense, you will have to register as a sex offender with

11:35   5   the proper state and/or local agency or agencies in any state

6   where you reside, are employed, carry on a vocation or where

7   you are a student, within 10 business days of your conviction

8   being final.  Do you understand that?

9          THE DEFENDANT:  Yes.

11:35   10          THE COURT:  All right.  Now, I assume that you have

11   received a copy of the indictment that is pending against you.

12   Is that correct?

13          THE DEFENDANT:  Yes, I have.

14          THE COURT:  All right.  Let's see.  There are three

11:36   15   counts in the indictment pending against you.  Count One,

16   coercion and enticement.  Do you understand the charge against

17   you in Count One of the indictment?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  All right.  In order for you to be

11:36   20   convicted of that offense, the government has to prove the

21   following four things beyond a reasonable doubt.

22          MS. LEO:  Your Honor, I apologize to interrupt the

23   Court, but I believe that the sentence data sheet that we had

24   submitted to the Court is incorrect in regards to those

11:36   25   elements.  And so I do have the proper elements.  It lists out

1  that the underlying conviction would be for production of child

2  pornography, but it is actually rape under the Arkansas Code

3  Section 5-14-103, and that's in the fourth element.  So it

4  should read --

5            THE COURT:  Why don't you recite -- the four elements

6  that have to be proved beyond a reasonable doubt by the

7  government for you to be convicted of coercion or enticement

8  are the following.

9            MS. LEO:  Yes, Your Honor.  And I apologize.

10            The first element is that the defendant knowingly

11  persuaded, induced, enticed, coerced or attempted to persuade,

12  induce, entice or coerce an individual to engage in any sexual

13  activity as charged.  Second, that the defendant used the

14  Internet and/or a cell phone to do so.  Third, the defendant

15  believed that such individual was less than 18 years of age.

16  And, fourth, had the conduct occurred, the defendant could have

17  been charged with the criminal offense of rape under the

18  Arkansas Code Section 5-14-103.

19            THE COURT:  All right.  And the penalty is correct?

20            MS. LEO:  Yes, Your Honor.

21            THE COURT:  So if you are convicted of Count One, the

22  penalty is not less than 10 years and up to a maximum of life

23  in prison, plus a fine of $250,000.  Do you understand that's

24  the maximum penalty?

25            THE DEFENDANT:  Yes.  I understand.

11:37    1       THE COURT:  All right.  And then there would be a

         2   period of supervised release which could go anywhere from five

         3   years to life on supervised release.  Do you understand that?

         4       THE DEFENDANT:  Yes, I do.

11:38    5       THE COURT:  I will talk more about supervised release

         6   in a minute.

         7           There would also be a $100 special assessment and

         8   a $5,000 victim special assessment for that count.  Do you

         9   understand that?

11:38   10       THE DEFENDANT:  Yes, I do.

        11       THE COURT:  All right.  Count Two charges you with

        12   production of child pornography.  Do you understand that

        13   charge?

        14       THE DEFENDANT:  Yes, I understand that one.

11:38   15       THE COURT:  The elements that have to be proved there

        16   by the government beyond a reasonable doubt are the following:

        17   That the defendant did employ, use, persuade, induce, entice or

        18   coerce a minor to engage in sexually explicit conduct.  Number

        19   two, that you did this for the purpose of producing a visual

11:38   20   depiction.  Number three, that at the time the victim was, in

        21   fact, a minor and, four, that the defendant produced the visual

        22   depiction using materials that had been mailed, shipped or

        23   transported in or affecting interstate or foreign commence by

        24   any means, including computer, or that the visual depiction was

11:39   25   actually transported using any means or facility of interstate

1  or foreign commerce or in or affecting interstate or foreign

2  commerce or mail.

3              Those four things have to be proved beyond a

4  reasonable doubt by the government for you to be convicted of

5  the offense alleged in Count Two of the indictment.  Do you

6  understand that?

7              THE DEFENDANT:  Yes, I do.

8              THE COURT:  Now, the penalty for that is a term of

9  imprisonment of at least 15 years up to a maximum of 30 years

10  in federal prison and a fine of up to $250,000.  Do you

11  understand that?

12              THE DEFENDANT:  Yes, I do.

13              THE COURT:  There would also be a period of supervised

14  release on that charge of at least five years up to life on

15  supervised release.  Do you understand that?

16              THE DEFENDANT:  Yes, I do.

17              THE COURT:  All right.  Now, with respect to Count

18  Three of the indictment, you're charged with possession of

19  child pornography.  Do you understand that charge?

20              THE DEFENDANT:  Yes, I do.

21              THE COURT:  All right.  Now, in this case, the

22  government has to prove the following three elements beyond a

23  reasonable doubt for you to be convicted of that offense.

24  Number one, that you knowingly possessed materials that

25  contained child pornography, and, two, the materials were

11:40    1   mailed, shipped or transported in interstate or foreign

2   commerce by computer or any other means, or they were produced

3   using materials that had been mailed, shipped or transported in

4   interstate or foreign commerce, and, number three, that when

11:40    5   you possessed the material, you knew that the material was or

6   contained child pornography.

7               Those three things have to be proved beyond a

8   reasonable doubt for you to be convicted of the offense alleged

9   in Count Three of the indictment.  Do you understand that?

11:40   10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  All right.  Now the penalty for that is a

12   term of imprisonment of not more than 10 years and a fine of up

13   to $250,000.  That also carries the possibility of a $5,000

14   special assessment for the victims of sex trafficking and a

11:40   15   $100 special assessment to be paid to the Court.  Do you

16   understand that?

17          THE DEFENDANT:  Yes, I do.

18          THE COURT:  Again, the term of supervision is at least

19   five years up to life in prison -- I mean, life on supervised

11:41   20   release.  Do you understand that?

21          THE DEFENDANT:  Yes, I do.

22          THE COURT:  All right.  Now, with respect to

23   supervised release, supervised release is what happens after

24   you are released from prison, and supervised release has

11:41   25   certain conditions that you must comply with.  If you fail to

11:41 1 comply with the conditions of your supervised release, then I

2 can revoke your supervised release and send you back to federal

3 prison without any credit for the time that you already served

4 on supervised release before you committed the violation.  Do

11:41 5 you understand that?

6    THE DEFENDANT:  Yes, I do.

7    THE COURT:  If you violate the conditions and I revoke

8 your supervised release, I can impose another term of

9 supervised release after you serve the prison time on the

11:41 10 supervised release violation.  If you commit another crime

11 while you are on supervised release, you may be sentenced to

12 additional years in prison and other punishment, depending upon

13 what the crime is.  And I can run the jail time that I give you

14 on the supervised release violation in addition to, and not

11:42 15 concurrently, with the jail time on the new charge.  Do you

16 understand that?

17    THE DEFENDANT:  Yes, I do.

18    THE COURT:  All right.  Finally, there is no parole in

19 the federal prison system and any prison sentence that you

11:42 20 receive in this case will not be shortened by parole.  Do you

21 understand that?

22    THE DEFENDANT:  I do.

23    THE COURT:  All right.  So you understand the charges

24 against you and the range of punishment that you are facing

11:42 25 with these charges?  Is that correct?

11:42   1          THE DEFENDANT:  I understand.

2          THE COURT:  So it's my understanding, Counsel, that we

3    have no plea agreement of any kind in this case?

4          MS. LEO:  That is correct, Your Honor.

11:42   5          MR. THOMAS:  That's correct.

6          THE COURT:  All right.  So let me ask you,

7    Mr. McGavitt, has anyone made any promise or assurance to you

8    of any kind in an effort to get you to plead guilty in this

9    case?

11:42   10          THE DEFENDANT:  No.

11          THE COURT:  Has anybody attempted in any way to force

12    you or to coerce you into pleading guilty?

13          THE DEFENDANT:  No.

14          THE COURT:  All right.  Do you understand that what we

11:42   15    are doing here today with respect to your plea of guilty is

16    final and that if the sentence that you receive later on at the

17    sentencing hearing is longer than you expected to receive, you

18    are not going to be able to come back in here on that basis and

19    try and withdraw these guilty pleas and start this process over

11:43   20    again?  Do you understand that?

21          THE DEFENDANT:  I understand.

22          THE COURT:  Now, there are a number of factors that

23    can affect the length of your sentence in this case.  One of

24    those factors is your prior criminal history, if you have one.

11:43   25    Depending upon what crimes you may have committed in the past

1   and when those crimes were committed, that can affect the

2   length of your sentence in this case.  Do you understand that?

3           THE DEFENDANT:  I understand that.

4           THE COURT:  With respect to the possession of child

5   pornography, the number of images possessed usually means a

6   longer sentence.  More images, longer sentence.  Do you

7   understand that?

8           THE DEFENDANT:  Yes, I do.

9           THE COURT:  All right.  So if you plead guilty today

10  and I accept your plea, then your guilt is established and we

11  move to the sentencing process.  This is a summary of what

12  happens from this point on:  The probation department conducts

13  a presentence investigation, and they prepare a report to

14  assist me in sentencing.  You can contribute to that report by

15  meeting with probation, along with Mr. Thomas, and providing

16  them with information.  The government does the same thing.

17  And then you see the presentence report before I do.  And you

18  can object to any errors that you think it contains.  The

19  government can do the same thing.  And then the probation

20  department writes responses about any objections that you have

21  raised or that the government has raised, and then they send

22  the entire packet of information to me so that I can review it

23  prior to the sentencing hearing.

24           And at the sentencing hearing, everyone comes

25  back to court, just like we are here today, and you and

11:44   1   Mr. Thomas will have an opportunity to speak on your behalf

2   before I determine the sentence in your case.  Do you

3   understand how the process works?

4           THE DEFENDANT:  I understand.  Yes.

11:44   5           THE COURT:  Even though I do the sentencing, I do not

6   know what sentence you are going to receive in this case, but I

7   will decide all disputed factual and legal issues, and then I

8   will determine the appropriate sentencing guideline range.

9   That is the range of months that are recommended under the

11:44   10   advisory guidelines for your sentence.  In doing this, I do not

11   use the beyond a reasonable doubt standard that a criminal jury

12   uses, and the rules of evidence do not apply, because the

13   sentencing process is much more informal than a trial.

14   However, what you need to understand -- and I'm sure what your

11:45   15   attorney has explained to you -- is that in this case, with

16   respect to Count One, there is a mandatory minimum of 10 years

17   in federal prison that can go all the way up to a maximum of

18   life.  Do you understand that?

19           THE DEFENDANT:  Yes, I do.

11:45   20           THE COURT:  And with respect to Count Two, it is 15 to

21   30 years, so there's a mandatory 15-year minimum in that case.

22   Do you understand that?

23           THE DEFENDANT:  Yes, I do.

24           THE COURT:  All right.  I assume that you have gone

11:45   25   over the sentencing guidelines with Mr. Thomas, and he has

1    explained how they may work in your case.  Is that right?

2              THE DEFENDANT:  He has, yes.

3              THE COURT:  Well, whatever he has told you about the

4    sentencing guidelines and how they may work in your case, I

5    want you to understand that's not a promise or a guarantee of

6    any kind from Mr. Thomas about your sentence.  It is simply his

7    best estimate of what is going to happen in this case, based on

8    his experience.  Do you understand that?

9              THE DEFENDANT:  Yes, I do.

10             THE COURT:  All right.  Let's see now.  Before I can

11   accept a plea of guilty from you, I need to make a

12   determination that there is a factual basis for your plea of

13   guilty.

14             Before I get to that, Mr. Thomas, does your

15   client waive the formal reading of the indictment at this

16   point?

17             MR. THOMAS:  We will so waive, Judge.

18             THE COURT:  All right.  So, Mr. McGavitt, what I'm

19   going to do is I'm going to ask Ms. Leo to summarize the facts

20   that she believes the government can prove about you in this

21   case.  And when she finishes, I'm going to ask you if those

22   facts are true.  Do you understand?

23             THE DEFENDANT:  I do.

24             THE COURT:  Ms. Leo?

25             MS. LEO:  Yes, Your Honor.

11:46  1            On May 26, 2019, the Washington County Sheriff's

2      Office in Washington County, Arkansas was dispatched to the

3      residence belonging to the parents of minor victim number one,

4      who is a 13-year-old female.  Minor victim number one had

11:46  5      advised her parents that she had been involved in an online

6      relationship with an adult male known as Daniel McGavitt, who

7      was later identified as the defendant, who she believed resided

8      in Texas.

9            Minor victim one stated that she and McGavitt had

11:47  10     been communicating via Facebook.  Minor victim one stated that

11     McGavitt had requested on several occasions that she send him

12     nude photographs or videos of herself engaging in sex acts.

13           Minor victim one also detailed an occasion in

14     April of 2019 where McGavitt traveled to Arkansas from Texas

11:47  15     and engaged in sexual intercourse with minor victim one.

16           Subsequent to the report taken by the Washington

17     County Sheriff's Office, the information was relayed to the FBI

18     Little Rock - Fayetteville Resident Agency for further

19     investigation.  FBI Little Rock obtained a search warrant for

11:47  20     three different Facebook accounts, including that of minor

21     victim one and the profile utilized by McGavitt.  Investigators

22     positively identified George Daniel McGavitt as the owner of

23     the Facebook profile "Daniel McGavitt."  Investigators were

24     able to further identify McGavitt by placing him less than half

11:48  25     a mile from the residence of minor victim one, located in West

11:48  1   Fork, Arkansas, on April 11 of 2019 when a tow truck was

2   dispatched to remove his truck from a ditch.

3           On August 13, 2019, Special Agent Guerra was made

4   aware of the investigation involving minor victim one and

11:48  5   McGavitt.  Special Agent Guerra was able to confirm that

6   McGavitt was residing in the Houston area, more specifically

7   the Pasadena, Texas and Magnolia, Texas areas.

8           Special Agent Guerra reviewed the material

9   provided by Facebook as a result of the search warrant of the

11:48  10  accounts of minor victim one and McGavitt.  Special Agent

11  Guerra observed communications between the account of minor

12  victim one, and two different accounts belonging to McGavitt.

13  Special Agent Guerra observed at least three images depicting

14  minor victim number one that are considered to be child

11:48  15  pornography as defined in Title 18, United States Code,

16  Section 2256.

17          All three of the images received by McGavitt via

18  Facebook depict minor victim number one either rubbing her

19  vagina or minor victim number one inserting her fingers into

11:49  20  her vagina.

21          Special Agent Guerra observed at least two

22  instances where minor victim one advised McGavitt of her age

23  and where McGavitt acknowledges that minor victim one is, in

24  fact, under the age of 18.  Minor victim one stated in a

11:49  25  private message to McGavitt on May 2nd, 2019, "I don't know,

11:49   1   maybe it's just because I'm pretty tiny for a 14-year-old."

2           The next day, on May 3rd, 2019, McGavitt stated,

3   "Let me see your pussy.  Open your pussy."

4           Minor victim one responded a few minutes later by

11:49   5   sending an image depicting a minor female with her hand rubbing

6   her vagina.  Minor victim one has confirmed that all the images

7   sent to and received by McGavitt were, in fact, images she

8   produced at his behest.

9           Later in their communication via Facebook on

11:49   10   May 15, 2019, McGavitt stated, "I know I'm going to deal with a

11   lot till you 18, and I'm okay with that, babe."

12           Special Agent Guerra observed several IP

13   addresses resolving back to T-Mobile that were used to access

14   the accounts belonging to McGavitt.  All of the IP addresses

11:50   15   observed by Special Agent Guerra resolved back to the Houston,

16   Texas area, which is located in the Southern District of Texas.

17           On August 15, 2019, McGavitt was arrested on the

18   State of Texas charges unrelated to the facts of this

19   particular case.

11:50   20           At the time of his arrest, an LG cellular

21   telephone was found on his person and was taken into evidence.

22   Said cellular phone was later provided to Special Agent Guerra

23   by a task force officer assigned to the FBI's Child

24   Exploitation Task Force.

11:50   25           The LG cellular phone was subsequently identified

24

11:50   1   as an LG LM-X21OMA, cellular telephone with Serial Number

2   805CYZP141485.

3   On August 21, 2019, Special Agent Guerra obtained

4   a federal search warrant for the phone.  Pursuant to the search

11:50   5   warrant, Special Agent Guerra learned the phone number assigned

6   to the phone was (346)368-5564.

7   Special Agent Guerra found several chat

8   conversations on the device.  Special Agent Guerra found child

9   pornography images and videos depicting minor victim one.

11:51   10   There were a total of 71 images depicting minor victim number

11   one stored in the device, 16 of which met the federal

12   definition of child pornography.

13   There were 13 videos depicting minor victim

14   number one stored on the device.  All of the videos meet the

11:51   15   federal definition of child pornography.

16   One of the videos of minor victim one was found

17   on the phone depicted the following:  One video is 22 seconds

18   in length, depicting minor victim one, who is 13 years of age,

19   lying on a bed while completely nude.  Minor victim one, whose

11:51   20   face is visible throughout the video, can be seen inserting the

21   handle of a hairbrush into her vagina.  One of the images found

22   in McGavitt's phone of minor victim one is described as

23   follows:  Minor victim one, who is 13 years of age, is lying on

24   a bed, wearing only a white bra.  Minor victim one, whose face

11:52   25   is visible, can be seen inserting two fingers into her vagina.

11:52   1          Special Agent Guerra also observed on the phone

2      there were several pictures of McGavitt sent to minor victim

3      one via Facebook.  The pictures sent were of McGavitt -- were

4      of McGavitt or of his penis.

11:52   5          Additionally, there was a picture of the pickup

6      truck McGavitt drove to Arkansas on his phone.  The truck was

7      photographed by the tow service in Arkansas, and the images

8      appear to be of the same truck.

9          Additionally, the following contained messages

11:52   10     sent via Facebook to minor victim one by McGavitt after

11     May 29th of 2019, which was the last date captured in the

12     search warrant returned for the Facebook warrants.  These

13     messages are consistent with the earlier chats between McGavitt

14     and minor victim one.  McGavitt would be or has been charged in

11:52   15     Arkansas with rape in violation of the Arkansas Code

16     Section 5-14-103, which states that a person commits rape if he

17     or she engages in sexual intercourse with another person who is

18     less than 14 years of age.  This is the underlying crime for

19     the coercion and the enticement charge.  Consent is not a

11:53   20     defense to this crime under Arkansas law.

21          The defendant is in his 40s.

22          The Internet was used to facilitate his grooming

23     of the child, requesting the production of child pornography

24     and obtaining the images.  The Internet is a means and facility

11:53   25     of interstate and foreign commerce.

11:53    1          THE COURT:  All right.  Thank you, Ms. Leo.

2              Mr. McGavitt, you have heard the government's

3    attorney summarize the facts that she believes the government

4    can prove about you in this case.  Are those facts true?

11:53    5          MR. THOMAS:  Judge, if I may interject, as to all,

6    except for the issue where the minor vehicle -- the minor

7    victim one details the occasion in April where McGavitt

8    traveled to Arkansas to engage in sexual intercourse, my

9    understanding is my client acknowledges and admits the

11:53   10    remainder of the facts stated; however, we do dispute that

11    particular fact.

12              I do not believe that affects the sufficiency of

13    his availments to Count One.  I just wanted to let the Court

14    know that that is our position.  And I have talked to AUSA Zack

11:54   15    about that, as well.

16        MS. LEO:  Your Honor, in regards to the government's

17    response to that, the elements deal with the defendant

18    knowingly persuading, inducing and enticing or coercing or

19    persuading or -- excuse me -- or attempting to do that, to have

11:54   20    the individual engage in conduct that, had the conduct

21    occurred, it would be a crime under that state law.

22              So the government's position is that the sexual

23    abuse did occur, that there was sexual intercourse, as stated

24    by minor victim number one.  However, if the defendant is

11:54   25    contesting that, that is something that the Court can deal with

11:54    1    in regards to the sentencing enhancements at the time of

         2    sentencing, as long as the defendant admits that he is the

         3    individual who attempted -- who persuaded, induced, enticed,

         4    coerced or attempted to persuade, induce, entice and coerce an

11:54    5    individual who was under the age of 18 to engage in some sort

         6    of conduct that, had it occurred, he could be charged with that

         7    crime under the state of Arkansas.

         8              MR. THOMAS:  That's our understanding, Judge.

         9              THE COURT:  Is that true, Mr. McGavitt?

11:55   10              THE DEFENDANT:  Yeah.  Uh-huh.

        11              THE COURT:  With that clarification, the Court finds

        12    that there is a factual basis for the plea to all three counts.

        13                   So, Mr. McGavitt, let me ask you at this time,

        14    what is your plea to the charges against you in Counts One, Two

11:55   15    and Three of the indictment?  Guilty or not guilty?

        16              THE DEFENDANT:  Guilty.

        17              THE COURT:  Do you state here in court under oath that

        18    each and every allegation in Counts One, Two and Three all are

        19    true and correct and that you are making this plea of guilty

11:55   20    freely and voluntarily?

        21              THE DEFENDANT:  Yes.

        22              THE COURT:  Has anyone forced you, threatened you,

        23    coerced you or done any violence to you or any other person to

        24    get you to plead guilty?

11:55   25              THE DEFENDANT:  No, Your Honor.

11:55  1          THE COURT:  Are you pleading guilty because of any

2  promise that's been made to you by anyone?

3          THE DEFENDANT:  No.

4          THE COURT:  Are you pleading guilty because you are

11:55  5  guilty?

6          THE DEFENDANT:  I am guilty.  Yeah.

7          THE COURT:  And for no other reason?

8          THE DEFENDANT:  Uh-huh.

9          THE COURT:  All right.  Mr. Thomas, do you know of any

11:56  10 reason why your client should not plead guilty to these

11 charges?

12         MR. THOMAS:  No, Judge.

13         THE COURT:  Any additional admonishments that you or

14 Ms. Leo can think of that I need to provide to the defendant at

11:56  15 this time?

16         MR. THOMAS:  Not from the defense.

17         MS. LEO:  No, Your Honor.

18         THE COURT:  All right.  Thank you.

19             These are the Court's findings:  I find the

11:56  20 defendant is clearly mentally competent and capable of entering

21 an informed plea.  I find that the plea is supported by

22 independent facts establishing all of the elements of the

23 offense, each offense in each of the three counts, and that the

24 defendant intended to do the acts he committed.

11:56  25             I find the defendant's plea of guilty is

11:56   1   voluntarily, freely and knowingly made and that the defendant

2   understands the nature of these proceedings and the

3   consequences of his plea of guilty and that this is an informed

4   plea.  Therefore, I accept your plea of guilty, and I find you

11:56   5   guilty as charged in Counts One, Two and Three of the

6   indictment.

7          As I explained before, a presentence

8   investigation will now be conducted, and a report will be

9   prepared to assist me in sentencing.

11:57   10          The sentencing hearing in this case is set for

11   June 4 at 10:45 in this courtroom.

12          Let's see.  I guess that pretty much covers it.

13   Rhonda does have a copy of the order for presentence

14   investigation with disclosure and sentencing dates for both

11:57   15   counsel.

16          Anything else from the government?

17          MS. LEO:  Your Honor, I don't have an order of

18   forfeiture.  Can the government file that with the Court later?

19          THE COURT:  Yes.  Certainly.

11:57   20          MS. LEO:  Thank you.

21          THE COURT:  And run it by Mr. Thomas.

22          MS. LEO:  Yes, Your Honor.

23          THE COURT:  And if there is no objection, I will sign

24   it.

11:57   25          Anything else, Mr. Thomas?

11:57

1          MR. THOMAS:  Nothing from the defense.  Thank you.

2          THE COURT:  All right.  We are adjourned then.  Thank

3     you.

4          *(Court adjourned at 11:57 a.m.)*

5                              *  *  *  *

6          I certify that the foregoing is a correct transcript from

7     the record of proceedings in the above-entitled cause.

8

9     Date: November 12, 2020

10

11    */s/ Mayra Malone*
      ----------------------------------------

12    Mayra Malone, CSR, RMR, CRR
      Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25